BERRYL BERNSTEIN, an Infant, by JENNY BERNSTEIN, His Guardian ad Litem, and MANNY BERNSTEIN, Plaintiffs, *v.* EAST 167TH STREET CORPORATION, HENRY KOEHNE and FRED PARKER, Defendants.

City Court of New York, Trial Term, Bronx County, January 26, 1937.

*A. D. Shackton*, for the plaintiff.

*Joseph S. Robinson* [*Emil Z. Berman* of counsel], for the defendant East 167th Street Corporation.

DONNELLY, J.   The action by the infant plaintiff is to recover damages for personal injuries sustained as the result of a fall upon a spot of grease on the sidewalk abutting the premises owned by the corporate defendant.   Before the happening of the accident, a truck owned by the corporate defendant's superintendent was drawn up at the curb at the edge of the sidewalk in question; at that time some pipes, apparently to be used in plumbing, were unloaded from the truck and conveyed into the building.   After this had been done, the superintendent began to grease his truck and, while doing so, he had a can of grease upon the sidewalk which in some way was tipped over and some of the grease therein was spilled upon the sidewalk. It was upon this spot of grease that the infant plaintiff fell.

It is plaintiff's theory that at the time the grease was being used, the truck was under the supervision and control of the corporate defendant in such a manner and to such an extent as to make it liable for the acts of its superintendent in leaving the spot of grease

upon the sidewalk. The complaint alleges that the truck was owned by the corporate defendant's superintendent and operated and controlled by him and that it was being cleaned and greased by him in connection with his duties as such superintendent. As ownership of the truck by the superintendent is conceded by plaintiffs, the burden of proof is upon them to establish the corporate defendant's control of the truck and of the superintendent's use thereof in the business of the master at the time of the accident. (*Richter* v. *Merola Bros., Inc.*, 243 App. Div. 392.) Although the witness Evelyn Yankowitz, in response to leading and suggestive questions to which she automatically responded in the affirmative, testified she had seen the superintendent " a good many times " and " time and again " bring in articles to be used in the house, there was no satisfactory evidence that the truck was used exclusively in the business of the corporate defendant.

The presumption cannot be indulged that the corporate defendant was in control of the truck while its superintendent, the owner of the vehicle, was in the act of greasing it after he had finished the master's business. (*Fallon* v. *Swackhamer*, 226 N. Y. 444, 447; *Der Ohannessian* v. *Elliott*, 233 id. 326.) In *Bohan* v. *Metropolitan Express Co.* (122 App. Div. 590, 594) the court said: " But, as we have already seen, at the time of the accident he had delivered all the packages for the defendant, and was not then engaged in doing any work for it; he was then either taking the vehicle to the transportation company's office to have it repaired, or else was engaged in his personal business, and in neither case can it be said that he was acting as the servant of the defendant or engaged in its business. The defendant did not own the vehicle; had no right to inspect it, or give directions as to repairs. Under such circumstances, I know of no rule of law under which defendant can be held liable."

It cannot seriously be urged that because the truck was being greased by its owner such an act alone was in the course of his master's business. The process would have been done by the superintendent in any event to insure the proper maintenance of his property. The act itself was done when the conveyance of the pipes from the truck into the building had been completed. It was merely a coincidence that the greasing was done in front of the corporate defendant's premises. There would be no difficulty, I think, in holding the master not liable, if the greasing had been done at a time when the superintendent's daily round of work for his master had been completed, and at a place far removed from the master's building. Upon this hypothesis, it would follow that the greasing of his truck by the superintendent had no connection whatever with his master's business. Does liability attach to the corporate defendant because the particular time and location make the act

an incident of the master's business? I think not. A different situation would be presented if the work were being done upon an instrumentality owned by the master and used by the superintendent in the master's business, or if the vehicle, which was owned by the superintendent, was rented by him to the master in such a way that he had the right to direct or to command the exclusive use of it. (*Bohan* v. *Metropolitan Express Co., supra.*) So, in the instant case, was the superintendent, while he was greasing his truck, acting within the scope of his employment for his master? The answer, I think, is, no, he was not so acting. He had completed for his master the particular work for which his truck had been used; it is conceded that the truck was his own and not his master's property; all that may fairly be inferred from the testimony is that the superintendent's use of the truck in the master's business was an occasional use; it was not shown that the master had the right to the exclusive use of the truck or the right to direct the manner of its use and maintenance.

The complaint was drawn and the case was tried upon the theory that if any liability at all attached to the corporate defendant it was because it maintained control of the superintendent's truck to such an extent that it was responsible for its maintenance and, therefore, that the act of greasing the truck was an incident thereto, for which the corporate defendant is liable. When the case was assigned to me from Part I, plaintiff's counsel stated that it would resolve itself into a question of law arising out of the corporate defendant's liability. Counsel for the respective parties agreed to waive a jury and proceed to present the case, leaving to the court the determination of the question of law. Two witnesses were called by plaintiffs, the infant plaintiff, who testified to the accident, and Evelyn Yankowitz, who testified to having seen the superintendent " greasing the car after he got done unloading some pipes he had brought." This latter witness was not cross-examined. Aside from showing that the infant plaintiff's use of the crutch as he walked to the witness stand was not in any way due to the accident, only four questions were put to the infant plaintiff on cross-examination. These questions were confined to his having seen the grease on the sidewalk after he slipped and fell, and the location of the spot of grease. As the infant's redirect examination was about to begin, defendant's counsel interjected by asking him if it was light or dark at the time of the accident, to which he responded, dark. He was also asked, " There were street lights on, weren't there? " to which he replied, " Yes."

At the close of plaintiff's case, defendant's counsel moved to dismiss; he then rested, and renewed the motion. Decision on both motions was reserved. Defendant's counsel moved to dismiss,

upon the grounds: (1) That there has been no association between the alleged occurrence and the cause thereof. (2) That there has been no association between the greasing of the motor vehicle which allegedly precipitated the fall of the infant plaintiff and the scope of the employment of the defendant owner of that motor vehicle. (3) Upon the ground that the infant plaintiff has failed fully to establish any cause of action predicated in tort based on any negligence of this defendant East 167th Street Corporation; " and has failed, of course, to prove his own freedom from contributory negligence."

It was agreed between counsel for the respective parties and the court that memoranda should be submitted solely on the question of the control of the motor vehicle and its maintenance by the corporate defendant.

In the brief submitted by plaintiff's counsel, the point is made for the first time that " defendant corporation is liable for the affirmative negligence of the superintendent in placing the grease on the sidewalk and allowing it to remain there." In support of this contention, plaintiff's counsel argues, *inter alia:* " It matters not whether at the time that the grease got on the sidewalk, Koehne [the superintendent] was doing something for his employer or for himself or for a third party. When doing anything to the premises, Koehne could not throw off his capacity and responsibility as superintendent. This was not only an act on the premises but *to* (italics counsel's) the premises. When such an act violated his duty to the public it was a violation chargeable to his employer."

The memorandum submitted by plaintiff's counsel seeks to avoid the theory upon which the case was presented and tried, and presents an entirely new question, namely, that the corporate defendant is liable because of the superintendent's negligent act in putting grease on the sidewalk. At bar, the facts stated in the complaint do not constitute a wrong done to the infant plaintiff by reason of the corporate defendant's negligence in failing to keep the sidewalk clean, or in permitting the spot of grease to remain on the sidewalk after it got there through the act of the corporate defendant's superintendent. When the spot of grease got upon the sidewalk the superintendent, so far as the corporate defendant was concerned, was just as much a stranger to it as any other individual who threw something on the sidewalk which resulted in injury to a passerby. The case was presented and tried by plaintiffs upon the theory set forth in the complaint, namely, that at the time the grease was being used the truck was under the supervision and control of the corporate defendant in such a manner and to such an extent as to make it liable for the act of its superintendent in leaving the spot

of grease on the sidewalk. "In case a complaint proceeds on a definite, clear and certain theory, it will not support or permit of another theory because it contains isolated or subsidiary statements consistent therewith. A party must recover not only according to his proofs but according to his pleadings. * * * The complaint could be amended only at a time which would give the defendant a right and opportunity to meet by proof the allegations made against it." (*Walrath* v. *Hanover Fire Ins. Co.*, 216 N. Y. 220, 225, 226; *Scheu* v. *Union R. Co.*, 112 App. Div. 239.) And it is too late to move to amend to conform to the proof after the case has been submitted to the jury. (*Browne* v. *Stecher Lithographic Co.*, 24 App. Div. 480, 484.)

Liability of the corporate defendant cannot be predicated on the corporate defendant's duty to keep the sidewalk clean. It is the primary duty of the city of New York to maintain its sidewalks in reasonably safe condition. And this is so even though there be a statute or an ordinance requiring the owner to keep the sidewalk in repair. (*City of Rochester* v. *Campbell*, 123 N. Y. 405, 420; *Connolly* v. *Bursch*, 149 App. Div. 772.) The abutting owner is not liable to travelers for defects in the sidewalk not caused by himself. (*Mullins* v. *Siegel-Cooper Co.*, 183 N. Y. 129; *English* v. *Kwint*, 140 App. Div. 509, 514.) And in *Dedrick* v. *Schinasi* (179 App. Div. 763, 764) it was held that there is no liability upon an abutting owner, unless there be allegation and proof that he caused or was responsible for the defect. At bar, the condition on the sidewalk was not created by the corporate defendant or by any one acting for it at the time of and before the accident. The creation of that condition was the act of a third person for which the corporate defendant is in no way liable. When the superintendent began to grease his truck he was acting for himself and not in the business of his employer. Whatever duty there may have been to use a reasonable degree of care was his.

In the brief submitted by plaintiffs' counsel, he quotes from *Jennings* v. *Van Schaick* (108 N. Y. 530, 534, 535) as follows: "He [the janitor] was the servant of the owner, put there to control and care for the premises. Until some evidence was given to change that relation the owner alone was responsible for the wrongful management of the coal hole. * * * It remained his [the owner's] duty to care for the sidewalks, to remove the snow, and keep them safe. * * * It attached to his ownership." The case just cited involved an unguarded coal hole, under or adjoining the sidewalk, the coal hole in question being in defendant's control. In that case there was no issue as to the landlord's duty to keep the sidewalks free from snow.

"Until some evidence was given to change that relation the owner alone was responsible for the wrongful management of the coal hole." (*Jennings* v. *Van Schaick, supra,* at p. 534.) Running through all the numerous authorities in which are discussed the application of the maxim *respondeat superior,* the test to determine the master's liability is stated to be, was the act done while the servant was doing the master's work; and the test of master and servant relation is, was the servant, at the time of the alleged negligent act complained of, engaged in the master's business and subject to his control. At bar, on the theory of plaintiff's complaint, if any liability at all attaches to the corporate defendant, it is on plaintiffs' allegations that the corporate defendant maintained control over its superintendent's truck to such an extent that it is responsible for its maintenance. *Ford* v. *Grand Union Co.* (240 App. Div. 294) is cited by plaintiffs' counsel, who urges that because in that case the defendant's manager was in charge of the premises, his act in permitting the occurrence which resulted in fatal injury to plaintiff's intestate, made the defendant liable. *Ford* v. *Grand Union Co.* was reversed (268 N. Y. 243) upon the ground, among others, that the use of the basement in defendant's premises as a shooting gallery and from which came the bullet which killed the passerby, was not authorized by defendant, and was not in the course of the employment of defendant's manager or its other employees.

Even though the superintendent's act in greasing his truck was something he was doing for himself, nevertheless, so plaintiffs' counsel argues, as the fact was done in the course of his employment for the corporate defendant, the latter is liable. *Wood* v. *Saunders* (228 App. Div. 69) is cited in support of this proposition. The case is easily distinguishable from the one at bar. In *Wood* v. *Saunders* the accident was caused by a lighted cigarette thrown by defendant's employee, igniting gasoline at the latter's gas filling station, where the smoker was employed. In that case, the court held that at the time of the accident, Thorne, the employee, *was in the performance of his work for his master* and that his act of flipping his lighted cigarette over the open tank of gasoline was performed while he was doing his master's work in an irregular way.

As against the defendant superintendent Koehne, the trial was treated as an inquest, and against him judgment may be entered in favor of the infant plaintiff in the sum of $500 and in favor of the plaintiff Jenny Bernstein in the sum of $100. Motion by defendant East 167th Street Corporation to dismiss the complaint is granted; exception to plaintiffs. Ten days' stay and thirty days to make and serve case.