## BORDELON v. LUDEAU'S LUMBER YARD et al.

### No. 1760.

Court of Appeal of Louisiana. First Circuit.

Dec. 9, 1937.

Taylor, Porter & Brooks, of Baton Rouge, for appellant.

L. Austin Fontenot, of Opelousas, and Atlee P. Steckler, of Ville Platte, for appellee.

LE BLANC, Judge.

During the year 1936, Emile Ludeau operated a business in the town of Ville Platte under the trade-name "Ludeau's Lumber Yard." He was also interested in various other business enterprises, among them Ludeau & Guillory, Incorporated, which conducted sawmill operations at Lake Cocorrie, twenty-five miles north of Ville Platte and also a lumber yard in Ville Platte from which it sold only rough lumber which was transported from its sawmill. Mr. Ludeau and his son owned half of the stock in Ludeau & Guillory Co., Inc., and he was the president of the corporation.

On April 28, 1936, he took out a standard workmen's compensation and employer's liability policy with the Great American Indemnity Company of New York, in the name of Ludeau's Lumber Yard; he, as owner, being the designated employer. The life of the policy by its own terms was for the period of one year; that is, from April 28, 1936, to April 28, 1937.

On September 19, 1936, Hirdy Bordelon, plaintiff herein, while engaged in the

operation of a planer saw, in a planer mill, alleged to be the business of Ludeau's Lumber Yard, met with an accident and injury which resulted in the amputation of his left hand at the wrist. Notice of the accident was given to both his employer and the Great American Indemnity Company, and on the refusal of the latter to recognize liability for compensation, he instituted this suit against Ludeau's Lumber Yard, his alleged employer and the insurer, seeking to recover judgment against them, in solido, for compensation at the rate of $12.18, that being 65 per cent. of his alleged weekly wage of $18.75, for the period of one hundred and fifty weeks, all as per the provisions of our state workmen's compensation statute.

The defense of the insurer, Great American Indemnity Company of New York, is that plaintiff was not an employee of Ludeau's Lumber Yard and therefore was not covered by the policy issued by it in favor of Emile Ludeau, owner of that business. The defendant Emile Ludeau, as he will be referred to hereafter, answered, admitting practically all the allegations in plaintiff's petition but resisting liability on the ground that he was protected by the policy issued to him by the insurer. He then set out that under the provisions of the contract the insurer had obligated itself to indemnify him against all claims arising thereunder and to defend him in any suits or other proceedings instituted by any one protected under its terms, and, on further alleging that the insurer, after due notice, had refused to comply with the terms of the policy, he called it in warranty and prayed for judgment against it for any sum which he might be called on to pay on a judgment rendered against him. He further averred that under the provisions of the policy, the insurer was bound to reimburse him for any expenses he may be put to in defending the suit himself, and as he had incurred responsibility for attorney's fees to the extent of $500 in that connection, he also prayed for judgment in his favor against the Great American Indemnity Company in that sum.

There was judgment below in favor of plaintiff and against both defendants, as prayed for, and in favor of Ludeau's Lumber Yard on its call in warranty against the Great American Indemnity Company for the amount of compensation as decreed and for the further sum of $500 as attorney's fees. The defendant Great American Indemnity Company appealed. Plaintiff answered praying for the statutory damages for frivolous appeal, and Ludeau also answered praying that the judgment be affirmed as rendered and, in the alternative, should he be cast for any amount, that he in turn have judgment against the appellant therefor and for costs, interest, and attorney's fees.

Counsel for the Great American Indemnity Company filed an exception of no right or cause of action to the call in warranty made on it by its codefendant which was overruled in lower court. They now complain of that ruling and again urge the exception before this court.

The exception is based on the proposition that the policy which it issued is a contract of indemnity in which it indemnified Ludeau against any judgment that might be rendered against him. In other words, its obligation was to make good any future loss Ludeau might sustain for damage arising under the contract and no action lies against it until such loss or damage has been sustained. The exception is in effect a plea of prematurity, the contention being that the insured has no cause of action under the policy before and until judgment has been rendered against him. They cite in support of their exception the case of Bain v. Arthur, 129 La. 143, 55 So. 743. That case is good authority for the proposition as stated by counsel. The contract which the court had before it for consideration was strictly one for indemnity and under which the parties called in warranty had obligated themselves to a bonding company serving as surety on a contractor's bond, to hold that company harmless against all suits, claims, demands, etc., arising from or growing out of the signing of the said bond. In this case, the obligation which the insurer undertook is more direct and far more reaching. By the terms of the policy, it agreed, among other things, "To defend, in the name and on behalf of this Employer, any suits or other proceedings which may at any time be instituted against him on account of such injuries, including suits or other proceedings alleging such injuries and demanding damages or compensation therefor, although said suits, other proceedings, allegations or demands are wholly groundless, false or fraudulent." And further, it agreed, "To pay all costs taxed against this Employer in any legal

proceedings defended by the Company, all interest accruing after entry of judgment and all expenses incurred by the Company for investigation, negotiation or defense."

These obligations certainly contemplate something beyond merely indemnifying the assured employer under the policy for any loss he may sustain and be condemned to pay to any of his employees by reason of injuries suffered by them and arising out of their employment. Under the first of these quoted paragraphs, we find a direct and positive obligation to do the very thing which the insurer has refused to do and for the breach of which it has incurred the penalties prescribed and for which it obligated itself in the second paragraph. After the manner in which this insurer has bound itself, to defend suits or other proceedings against the assured employer even though they are "wholly, groundless, false or fraudulent," we can hardly understand how it can now contend that the assured has to first be condemned by judgement on a claim presented against him before it can be made to meet its responsibility. We find no merit in the exception and hold that it was properly overruled in the lower court.

The merits of the case present a simple question of fact. It is the insurer's contention that plaintiff was employed by Ludeau & Guillory, Incorporated, and not by Ludeau's Lumber Yard, and as Ludeau & Guillory, Incorporated, was not insured by it for workmen's compensation, they naturally have no liability.

There is no doubt but that during the months of June, July, and August, 1936, plaintiff was working for Ludeau & Guillory, Inc. This is freely admitted by all parties concerned. But the evidence seems to be equally positive that during the month of September of that year, after Mr. Ludeau had decided to erect a planer mill and open a lumber yard in the town of Ville Platte, he was employed by Mr. Ludeau in the conduct and operation of that business and was actually on the job in the planer mill, operating the planer saw when he was injured. The testimony is positive to the effect that he went to New Orleans with Mr. Ludeau to select the planer mill and later was sent by Mr. Ludeau, with the Ludeau's Lumber Yard's own truck to transport the mill to Ville Platte. The circumstances under which this mill was bought leaves but little doubt that it was Mr. Ludeau's personal purchase. The invoice is made out to him in his trade-name of "Ludeau's Lumber Yard" and he made a down payment on the day on which it was purchased with his own personal funds, by drawing his individual check for the amount. The sales company insisted on a cash payment, and as Mr. Ludeau did not have any blank checks with him he converted a Whitney National Bank check into one on his local bank in Ville Platte.

Plaintiff states positively that he was working for Ludeau's Lumber Yard, and Mr. Ludeau also testifies that he was so employed, so, to offset all of this positive testimony, counsel now charges that there has been a conspiracy entered into with the purpose of letting Mr. Ludeau evade his responsibility to pay the compensation that is due plaintiff and force this obligation on the insurance company.

To support this charge, counsel for the insurer rely on the testimony of two witnesses, one of them an agent of the defendant and the other an auditor for insurance companies, who state that from their investigation of the books of Ludeau & Guillory Co., Inc., it appears that plaintiff was carried on the pay roll of that company and was paid his salary of $75 per month by it. As already stated, it is not disputed that plaintiff was, until September, 1936, the month in which he was injured, employed by Ludeau & Guillory Co., Inc., and no doubt the books and accounts of that company, which it is shown were kept by the same party who kept all of Mr. Ludeau's books and accounts, do carry him on that company's pay-roll account. Considerable stress is placed on an entry appearing on a scrap of paper which counsel maintain bears out their contention of Mr. Ludeau's evil design to escape liability and force their client to pay an unjust compensation claim. One of the two witnesses referred to stated that he had found a slip of paper among the papers of Ludeau & Guillory Co., Inc., which showed that plaintiff had been paid his salary up to September 20, 1936, but that when the other of these two witnesses made his examination of the books of Ludeau & Guillory Co., Inc., a few days later, he found that the former slip had been substituted by another with a different notation in order to show, by what is referred to as a "crude attempt" to charge this loss to the insurance company. Counsel complain of the trial court's ruling

which prevented them from placing the bookkeeper of Ludeau & Guillory Co., Inc., on the witness stand under cross-examination to probe deeper into this charge. This party, the record shows, was available to them as a witness in their client's behalf, but they declined to use him as such, and further they seem to have made no effort to have the books and accounts relied on brought into court in support of their charges.

There appears proof also in the record to the effect that there was a sign on the street in Ville Platte pointing to the site of the planing mill where plaintiff was injured, and that sign bore the name of Ludeau & Guillory Co., Inc. This proof, it is further contended, supports the defense that this planing mill business was being operated by Ludeau & Guillory Co., Inc., plaintiff's real employer. Clearly this is not proof of such nature and serious enough to be weighed against the positive facts and circumstances already referred to concerning the erection of this planer mill by Mr. Ludeau. Besides, there is a satisfactory explanation made about the sign which once served the purpose for which it had been placed there.

We are fully satisfied that the plaintiff has carried the burden of showing, as he had alleged, that he was employed, at the time he was injured, by Ludeau's Lumber Yard, the assured employer under the policy issued by the Great American Indemnity Company, and the judgment of the lower court in favor of Ludeau's Lumber Yard on its call in warranty against the insurance company is correct.

There is a further contention made regarding the rate of compensation which has been decreed against it, by the insurance company. By insisting that plaintiff was paid a salary of $75 per month instead of a weekly wage as alleged by him, it is urged that his rate of compensation should be $11.245 weekly, instead of $12.18 as allowed in the judgment below. The total salary for the year is taken and the weekly average is arrived at by dividing this figure by 52 weeks. But here, again, the defendant insurance company has failed to overcome the proof in the record that plaintiff's weekly salary was $18.75, and based on that amount, the rate of weekly compensation has been correctly computed in the judgment appealed from.

There is no doubt that the insurance company has incurred the penalty for attorney's fees under the insurance policy as appears from the second clause which has heretofore been quoted herein. Its counsel does not dispute liability in that respect provided it is otherwise condemned. They do insist, however, that the amount allowed in the judgment below is excessive and out of proportion with the value of the services rendered. In this we agree with them. The only proof bearing on that question is to the effect that the attorney engaged would receive a fee of between $300 and $500.

When we take into consideration that the workmen's compensation statute allows the attorney for the employee himself, not more than 20 per cent. of the amount of the award, and that here the total amount is $1,827, it becomes at once apparent that $500 is too large an amount to be allowed in this case. Considering the total amount of compensation to be paid, the value of the services rendered by Mr. Ludeau's attorney, and the awards made by the courts in the cases cited, we believe that $250 would be a fair and reasonable fee and will fix it at that amount.

Plaintiff's demand for damages as for frivolous appeal is denied.

For the reasons stated, it is therefore ordered that the judgment appealed from be amended by reducing the amount allowed as attorney's fees in favor of the appellee Ludeau's Lumber Yard and against the appellant Great American Indemnity Company of New York from the sum of $500 to the sum of $250, and that as thus amended, it be affirmed.